IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                     CRIMINAL ACTION NO. 6:13-cr-00290

TOBY GERMAINE PERSON,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Toby Person's motion to suppress [ECF 20]. For the reasons that follow, the Court **DENIES** the motion.

I.      PROCEDURAL BACKGROUND

Defendant is charged in a single-count indictment with possessing with intent to distribute a quantity of a heroin in violation of 21 U.S.C. § 841(a)(1). (ECF 1.) Defendant filed the pending motion to suppress evidence of criminal activity found inside a hotel room during a search conducted on August 4, 2013. Defendant also moves to suppress as the fruits of such search any inculpatory statements Defendant made incident or subsequent to that search and any other evidence obtained by further warrants based on evidence seized from the hotel room search. (ECF 20.) On July 1, 2014, the Court conducted an evidentiary hearing on Defendant's motion to suppress. Following that hearing, two video recordings of witness statements that were not available to be introduced into evidence at the hearing were provided to the Court.

II.     FACTUAL BACKGROUND

The following facts were adduced during the suppression hearing, during which Lieutenant Greg Collins of the Parkersburg Police Department was the only witness. (Suppression Hearing Transcript at 5 (hereinafter "Transcript").) The facts are drawn from Lieutenant Collins' testimony as well as from the disputed search warrant and accompanying affidavit, the transcripts of the two witnesses' statements, and the video recording of those statements submitted subsequent to the hearing.[1] The parties stipulated to the authenticity of these materials at the hearing. (Transcript at 3−4.) Except as noted below, the facts are not seriously in dispute.

Late in the evening on August 3, 2013, the Parkersburg Police Department and West Virginia State Police stopped a vehicle driven by Bonnie Myers and in which Jack Poland was a passenger. (ECF 27-1 at 3.) A K-9 sniff conducted by a Wood County Sheriff's Office K-9 unit resulted in an indication on the vehicle. (*Id.*) During a subsequent search officers seized a small plastic bag containing six suspected hydrocodone pills from Myers' purse and two plastic bags containing suspected cocaine and a plastic bag containing suspected cocaine base from the front passenger seat of the vehicle. (*Id.*) The suspected cocaine and cocaine base field tested positive for cocaine base and both Myers and Poland were taken into custody and transported to the Parkersburg Police Department. (*Id.*)

Thereafter, in the early morning hours of August 4, 2013, Detective J.M. Stalnaker conducted an interview with Poland, and Lieutenant Collins conducted an interview with

---

[1] At the suppression hearing, the Government indicated that in addition to the transcripts, the interviews with these witnesses were recorded by video, and that such recordings had been provided to the Defendant as part of discovery. As no copies were available at that time to be introduced into evidence, the parties agreed that copies of those recordings would be subsequently provided to the Court. The Court has received such recordings and they will be made part of the record upon entry of this Memorandum Opinion and Order.

Myers.[2] (Transcript at 9−10.) Both individuals were given *Miranda* warnings, waived their rights, and agreed to be interviewed. (ECF 27-1 at 3-4; Transcript at 8.) These interviews were captured by audio and video recording (Transcript at 24), and subsequently transcribed (ECF 27-3; ECF 27-4).

As relevant here, however, Detective Stalnaker's affidavit stated that Poland indicated that in the late afternoon of August 3, 2014, he and Myers traveled to the Comfort Inn in Parkersburg, West Virginia, where they met a black male that goes by the name of "T" and "at that time when [sic] to what he believed to be room 215." (ECF 27-1 at 3-4.) Inside the hotel room, Poland stated, were two children and a white female. (*Id.*) Poland said that Myers proceeded to purchase cocaine, cocaine base, and a couple of pills from "T". (*Id.*) Poland further indicated where the drugs were stored in the hotel room and that "T" had a large amount of cash. (*Id.*)

Detective Stalnaker's affidavit also incorporated Lieutenant Collins' interview with Myers (Transcript at 11), advising that Myers "stated that Toby Person's [sic] was currently staying at the Comfort Inn, possibly in Room 210 and she buys marijuana from him." (ECF 27-1 at 4.) Detective Stalnaker noted that it was possible but not confirmed that the "T" referenced by Poland was the same person as the Toby Person referenced by Myers. (*Id.*)

Detective Stalnaker further stated:

> [D]etectives responded to the Comfort Inn and spoke with employees in an attempt to verify who was residing in room 210 and room 215. Detectives learned that 210 was occupied by two people with a Columbus, Ohio address, they paid cash and are checking out during the morning hours of 8/4/13. Detectives

---

[2] Defendant disputes certain representations made in the affidavit supporting the search warrant regarding these interviews. Where relevant, those disputes are addressed in the discussion below.

    learned that room 215 is a normal customer, possibly a construction company.[3]

(*Id.*)

Following these interviews, Detective Stalnaker sought and received a search warrant for room 210 of the Comfort Inn from a Wood County Magistrate Court. (ECF 27 at 1-4.)

Early in the morning of August 4, 2014, at approximately 4:00 a.m., the search warrant was executed on room 210, where police located Defendant and seized certain quantities of drugs and drug paraphernalia that are the object of Defendant's motion to suppress. (ECF 20; ECF 23 at 4.)

### III.  LEGAL STANDARD

"When officers conduct a search and seizure pursuant to a warrant, the defendant has the burden of proving by a preponderance of the evidence that suppression is warranted." *United States v. Hazelwood*, 1:08CR00225-1, 2008 WL 9462825, at *4 (M.D.N.C. Sept. 26, 2008) (citing *United States v. Matlock,* 415 U.S. 164, 178 n.14 (1974)), *aff'd,* 412 F. App'x 617 (4th Cir. 2011); *see also United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) ("When a defendant's motion to suppress challenges the constitutionality of a search warrant, a defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional.").

### IV.  DISCUSSION

As clarified at the suppression hearing, Defendant raises two arguments for the search warrant for room 210 to be voided and all evidence discovered thereupon and thereafter suppressed. (Transcript at 29.)[4]

---

[3] Lieutenant Collins testified that the word "normal" as used in this section of the affidavit was intended to mean "periodically," as in a customer that is there frequently. (Transcript at 17.)

4

First, Defendant argues that the warrant and accompanying affidavit failed to establish on their face probable cause to enter and search room 210. Second, Defendant argues that Detective Stalnaker recklessly or purposely omitted material information from his affidavit such that the warrant must be voided pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Court considers each of Defendant's contentions in turn.

A.  *Facial Validity of the Warrant*

Defendant first argues that the affidavit and warrant failed to demonstrate probable cause. The Court is not persuaded.

Search warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment. *United States v. Harris*, 403 U.S. 573, 577 (1971). In reviewing a judicial officer's probable cause determination, the Court must accord "great deference" to the issuing judge's assessment of the facts presented to him. *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). Importantly, "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

"A probable cause assessment requires the issuing judge to decide whether, given the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010) (citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

---

[4] Defendant's motion to suppress also advanced an argument that the officers serving the search warrant violated the knock-and-announce rule. (ECF 20 at 4.) In response to the Government's argument that such argument should be dismissed (ECF 23 at 5 n.1), Defendant withdrew that argument at the suppression hearing. (Transcript at 28.) *See United States v. Ramos-Cruz*, 667 F.3d 487, 492 (4th Cir. 2012) (explaining that "the Supreme Court's decision in *Hudson v. Michigan*, 547 U.S. 586 (2006), established that the exclusionary rule does not apply to knock-and-announce violations").

With respect to the reliability of a known informant, a district court in the Northern District of West Virginia has explained:

> Probable cause can be founded on information received from an informant if, in view of the totality of the circumstances, the judicial officer is satisfied with the veracity and basis of knowledge of the informant. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). An informant's reliability may be bolstered by "[t]he degree to which [the] informant's story is corroborated." *United States v. Hodge,* 354 F.3d 305, 309 (4th Cir. 2004). Nonetheless, "'there is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible.'" *United States v. Perez,* 393 F.3d 457, 462 (4th Cir. 2004) (citing *United States v. DeQuasie,* 373 F.3d 509, 518 (4th Cir. 2004)). "The officer applying for the warrant 'need not entirely eliminate the risk that an informant is lying or in error.'" *Id.* (citing *United States v. Capozzi,* 347 F.3d 327, 333 (1st Cir. 2003)).

*United States v. Loy*, 569 F. Supp. 2d 601, 608 (N.D. W. Va. 2008) (Stamp, J.).

Additionally, an informant's admissions to having committed a crime or having provided information in hopes of leniency for past crimes are "indicia of reliability" of the information provided. *See, e.g.*, *United States v. Harris*, 403 U.S. 573, 583 (1971). This is so because "[t]he informant's interest in obtaining leniency create[s] a strong motive to supply accurate information." *United States v. Miller*, 925 F.2d 695, 699 (4th Cir. 1991).

Here, substantial evidence supports the magistrate judge's probable cause finding.

The affidavit describes the statements of two identified witnesses, Poland and Myers. At the time of their statements, both witnesses recently had been taken into custody after a search of a vehicle in which they were traveling turned up pain pills, cocaine, and crack.

These witnesses independently indicated that an individual who sold drugs was staying at the Comfort Inn in question.

Poland further provided specific information regarding the drug purchase made at the Comfort Inn earlier on the day of the witnesses' arrest. The drugs he described purchasing were

substantially the same as those seized during the traffic stop. Poland also described the transaction in detail, including where the dealer, a black male that went by the name "T", stored the drugs in the hotel room and kept large amounts of money on his person. The affidavit further indicated that Poland believed that the room number was 215.

Myers indicated that Toby Person, a person from whom she "buys marijuana" was staying at the Comfort Inn, "possibly in room 210."

The affidavit further details how the detectives attempted to resolve the discrepancy between Poland's and Myers' differing indications of which room might be the location of drug activity. Specifically, they spoke with Comfort Inn employees to see who was staying in both room 210 and room 215, and learned that two people with a Columbus, OH, address and who had paid cash were in room 210 and that room 215 was in contrast occupied by a more routine visitor, a "normal customer, possibly a construction company."

In total, this was substantial evidence demonstrating a fair probability that contraband and evidence of a crime would be found in room 210 of the Comfort Inn.

Defendant contends that Myers' statement was too conditional to support a probable cause finding, in that the affidavit identified her as stating that Defendant was "possibly in room 210." But the detectives were not required to entirely eliminate the risk that Myers' statement was in error, and, moreover, the affidavit explicitly informed the magistrate of the discrepancy between Myers' and Poland's room identifications and described the efforts the detectives undertook to select the appropriate room.

Defendant further contends that these reconciliation efforts were inadequate because a person who works for a construction company and frequently stays at a hotel could also be using

7

that room to peddle drugs, and that, therefore, the affidavit failed to eliminate the possibility that a drug seller could be in room 215. (Transcript at 26.)

Although Defendant's theory may be plausible, also plausible and in fact more probable was the conclusion reached by the detectives that the individuals from Columbus, Ohio, who paid for a hotel room in cash and were not identified as normal customers of the hotel also may be selling drugs from that room. *See, e.g.*, *United States v. Gary*, 528 F.3d 324, 327 (4th Cir. 2008) (O'Connor, J.) (explaining that "a finding of probable cause does not require absolute certainty"); *United States v. Perez,* 393 F.3d 457, 462 (4th Cir. 2004) ("The officer applying for the warrant 'need not entirely eliminate the risk that an informant is . . . in error.'").

Notwithstanding Defendant's arguments, the Court **FINDS** that the above-described facts represent substantial evidence supporting the magistrate judge's finding that probable cause existed. Accordingly, Defendant's motion to suppress is **DENIED** with respect to his challenge to the facial validity of the warrant.

### B. *Material Information Omitted from the Warrant*

Next, Defendant argues that certain material information was recklessly or purposely omitted from the affidavit in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF 20 at 1.) Defendant's argument was difficult to discern from his motion, but from what the Court can tell from argument of counsel at the suppression hearing, Defendant appears to rely on the following alleged omissions from Detective Stalnaker's affidavit: (1) the affidavit did not indicate that Myers' knowledge that Defendant was in room 210 was based on hearsay (Transcript at 25, 27); and (2) the affidavit did not indicate that Myers denied to Lieutenant Collins that she had been at the Comfort Inn on the day of her arrest, and that, therefore her statement conflicted with Poland's (Transcript at 27). Again, the Court is not persuaded.

8

*1. Relevant Law*

"In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that in certain narrowly defined circumstances a defendant can attack a facially sufficient affidavit." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). Generally, *Franks* "serves to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause." *United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir. 2000).

Here, to prevail on his *Franks* claim, Defendant must show that the omissions were "'*designed to mislead*, or . . . made in *reckless disregard of whether they would mislead*' and that the omissions were material, meaning that their 'inclusion in the affidavit would defeat probable cause.'" *United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011) (emphasis in original) (citation omitted) (describing *Franks* analysis); *see also Colkley*, 899 F.2d at 301 (4th Cir. 1990) ("[T]o be material under *Franks,* an omission must do more than potentially affect the probable cause determination: it must be necessary to the finding of probable cause. For an omission to serve as the basis for a hearing under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause for arrest.") (internal quotation marks and citations omitted).

*2. Inconsistencies Between Video Recording and Transcript of Myers' Interview*

Initially, the Court observes that there are significant discrepancies between the transcript of at least the Myers interview and the video recording of that interview. Having compared the relevant portion of the transcript with the relevant parts of the recording of that interview, it is clear that the transcript provides only a partial picture of what was said during the interview. For example, significant non-verbal indications are not reflected in the transcripts.

In one relevant portion, the video[5] shows that Myers appeared to affirmatively indicate through non-verbal gestures that she was "sure" and "positive" that Defendant was in room 210. This articulation is consistent with Lieutenant Collins' testimony at the suppression hearing that Myers made numerous non-verbal communications, including nodding when he asked her "Are you sure it's [room] 210?" and "Positive?"  (Transcript at 20.)[6]

The discrepancy between the transcript and the video has relevance because Defendant relies exclusively on the transcript as the basis for certain factual allegations regarding Myers' statements to Lieutenant Collins.  Although ultimately there do not appear any completely dispositive discrepancies for purposes of resolving the instant motion, the Court notes the problem for the record and, where relevant herein, further notes those discrepancies that are relevant for discussion of Defendant's motion.

3.  *Asserted* Franks *Violations*

Defendant's *Franks* claim fails on both prongs.

First, Defendant has adduced no evidence that any facts were omitted from the affidavit with the intent to make the affidavit misleading, or in reckless disregard of whether the omission made the affidavit misleading.  Indeed, Defendant has barely provided more than a conclusory assertion to that effect.  To the contrary, Lieutenant Collins credibly testified that Myers positively confirmed that Defendant was in room 210 and that there was no doubt in his mind that when she said that he was in room 210 that was where he was.  That Myers affirmatively indicated room 210 is confirmed by the video of the interview, although her non-verbal assents that she was "sure" and "positive" of this location are not reflected in the transcript of her

---

[5] The videos were provided to the Court in multiple video files.  Herein, in reviewing Myers' statements, the Court references video file ch04(ROOM2_2)_130804000738_130804012153_00_1023MD_ADMIN at 44:50−47:00).

[6] At other times not relevant here, the transcripts also appear to provide an incomplete account of what was said.

interview. (ECF 27-3 at 9.) Such facts counsel strongly against a finding that Lieutenant Collins acted with an intent or reckless disregard to mislead. Rather, they tend to suggest that Myers' account of the room number was included because Lieutenant Collins and Detective Stalnaker found it credible.

But even assuming without deciding that such a showing of intent or reckless disregard could be made, Defendant has also not demonstrated that the complained-of omissions were material.

Defendant has cited no authority in support of his conclusory argument that probable cause would have been defeated by the inclusion in the affidavit of a statement that the way that Myers had knowledge of Defendant's room number was through hearsay. Contrary to Defendant's position, "an affidavit based on hearsay can establish probable cause depending on 'all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information' and the 'degree to which an informant's story is corroborated.'" *United States v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011) (citing *United States v. Hodge,* 354 F.3d 305, 309 (4th Cir. 2004)).

Here, Myers' statement is not a model of clarity and is, at times, hard to follow. Nevertheless, Myers suggested that she heard that Defendant was in room 210 from one or more individuals with whom Myers had spoken outside the Comfort Inn, where she stated she had been the day before her arrest. (ECF 27-3 at 7−9; Transcript at 21.) That this information was reportedly provided by people outside this very hotel lends support to the basis of the hearsay declarants' statements as relayed through Myers. Moreover, Myers appears to have at least partially corroborated this hearsay with her subsequent affirmations that she was "sure" and "positive" about the room number. Finally, the likelihood of room 210 being the site of criminal

activity was further corroborated by the detectives' investigation into the different numbers provided by Myers and Poland. Accordingly, the Court cannot agree with Defendant that had the hearsay origin of Myers' knowledge been disclosed the warrant would be devoid of probable cause as to room 210.

Further, it appears that that Myers' lack of clarity may have been by design. Viewing her statement in tandem with Poland's, one might easily conclude that Poland's statement, which generally squared with the drugs found in their vehicle, was accurate, with the possible exception of the room number, whereas Myers was slapping together a vague and hard to follow explanation of how she was certain of the room number, yet had not been at the Comfort Inn that day. Reasonable officers could have concluded that she was not being truthful about the latter point and thus only included in the affidavit the one relevant fact that she appeared certain of, i.e., the room number.

Defendant's remaining complaint of an omission is also unpersuasive. Had the affidavit stated that Myers denied to Lieutenant Collins that she had been at the Comfort Inn on the day of her arrest, it would have at most demonstrated that her statement of her whereabouts that day conflicted with Poland's account. Such disagreement could have in theory impacted the magistrate judge's assessment of the reliability of *either* Poland or Myers, but it is simply too speculative to suggest that the inclusion of this fact would have overcome the otherwise substantial evidence demonstrating the fair probability that drugs were to be found in room 210. *See, e.g.*, *United States v. Clenney*, 631 F.3d 658, 665 (4th Cir. 2011) ("The process of preparing a warrant affidavit requires affiants to exercise discretion by selecting certain facts for inclusion and others for omission. An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.") (citation omitted); *United States v.*

*Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) ("Omitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing.").

Thus, the Court **FINDS** that Defendant has not shown that the warrant affidavit omitted information in violation of *Franks*, and, accordingly, Defendant's motion to suppress is **DENIED** with respect to his *Franks* challenge.

C. Additional Arguments

In consideration of this disposition, the Court has no occasion to reach Defendant's argument that the *Leon* good-faith exception does not apply or his argument that additional evidence should be suppressed as fruits of the poisonous tree. (ECF 20.)

V. CONCLUSION

For these reasons, Defendant's motion to suppress [ECF 20] is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, and the United States Probation Office.

ENTER: September 23, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE